Matter of the Final Judicial Settlement of the Account of the Proceedings of JEREMIAH P. ROBINSON and ISAAC R. ROBINSON, as Executors of the Last Will and Testament of JEREMIAH P. ROBINSON, Deceased.

Matter of the Final Judicial Settlement of the Account of the Proceedings of JEREMIAH P. ROBINSON and ISAAC R. ROBINSON, as Executors of the Last Will and Testament of ELIZABETH ROBINSON, Deceased.

Surrogate's Court, Kings County, February, 1907.

Reference — Report and findings — Time for making report, etc.— Notice to terminate — Not applicable to references by surrogate.
Surrogates' Courts — Procedure and review — Referees, auditors and assistants — Termination of reference.
Code of Civil Procedure, § 1019.

> The provision of section 1019 of the Code of Civil Procedure for the termination of a reference where the referee's report is not filed or delivered within sixty days from the time when the cause or matter is finally submitted does not apply to a reference by a surrogate to take proof and report under section 2546.
>
> Section 1019 of the Code of Civil Procedure does not limit the time within which a referee has jurisdiction to act in the absence of an election by the parties or one or more of them to terminate the reference. ·
>
> The time within which a referee is required to report may be extended and the provisions of section 1019 may be waived by the parties not only by formal stipulation but by such conduct as in fairness estops a man from taking advantage of the strict letter of the law.
>
> A case is not to be deemed closed although the taking of testimony has been concluded while the referee, in good faith, at the request of any party, holds the reference open to enable such party to submit a thing that he deems material though the thing to be submitted may appear to be unnecessary and not controlling.

Surrogate's Court, Kings County, February, 1907.   [Vol. 53

. MOTION to vacate and set aside a referee's report.

Owen & Sturges, for accounting executors.

Butler, Notman, Joline & Mynderse, for Central Trust Company, trustee.

J. Edwards Wyckoff, for Harriet W. R. Leach, individually and as executrix.

Grant Notman, special guardian for Leech infants.

Kenneson, Crain, Emley & Rubino, for Elizabeth De Witt Coombs, individually and as executrix.

J. Noble Emley, for William H. Coombs, trustee for Elizabeth De Witt Coombs.

Edward J. Mone, for Josephine B. Towle.

Milan Day Barnes, for William B. Leonard.

John B. Coleman, for Mabel R. Dumbell.

Perkins & Jackson, for Esther H. Underhill.

Charles H. Kelby, special guardian for John G. Underhill and Herman L. Underhill.

CHURCH, S.   This is a motion to vacate and set aside a referee's report on the ground that, at the time it was made, more than sixty days had elapsed since the matter had been finally submitted to him, and the attorney for one of the parties had elected to terminate the reference in accordance with the provisions of section 1019 of the Code.

The order of reference in this case is dated January, 1903, and the reference has proceeded with many adjournments and delays since that time.   The most complicated questions were considered and, if the opposition of the moving party is tenable, the entire four years' litigation goes for naught and will practically have to be gone over

again from the beginning. It is not contended that all the evidence which it is possible to take on the issues involved has not been submitted, or that, upon any new hearing, any circumstances will be shown which will in any way affect the result reached. But the moving party stands upon the technical rights which he claims under section 1019 of the Code and asks for the strict enforcement of its provisions. While the subject is one in which the court has no discretion and, hence, if the moving party has made out the facts bringing the case within the provisions of the section quoted, it must impose the penalty therein provided, yet it is perfectly manifest that this section should be construed in the same manner as statutes of a similar character, that is, strictly; and, unless the case is clearly within the letter of the statute, the motion should be denied.

The record discloses that, from the time of the first session to the delivery of the final report, there was a series of hearings, rehearings, adjournments and delays — which are not unusual in referred matters.

The attorney for the moving party does not, by either of the two notices which he gave electing to end the reference, nor by his motion papers, disclose the time at which he contends the case was deemed finally submitted to the referee and from which the sixty days given to the referee by the Code should be reckoned. But a long affidavit which he submits, of so much of the proceedings as he deems to be important, lays the subject generally before the court. It becomes necessary, therefore, to recite briefly the order of events before the referee:

At the outset, it may be stated that, although eleven sets of attorneys, appearing for as many different parties, were concerned in the case, the main controversy seems to have narrowed down between counsel for the executors and Kenneson, Crain, Emley & Rubino, counsel for the Coombs interests, and Mr. Coleman, counsel for Mrs. Dumbel, the daughter of Mrs. Coombs, who had a remainder interest. In this connection it is, perhaps, proper to call attention to the fact that Coleman and Kenneson, Emley & Rubino had their offices in the same building and in close proximity,

Surrogate's Court, Kings County, February, 1907. [Vol. 53.

and that upon the reference Coleman acted for Kenneson, Emley & Rubino's clients and that the brief which they subsequently submitted was the joint brief of both, in fact that, almost at the inception of the reference, Mr. Kenneson stated to the referee and had placed on the record the fact that Mr. Coleman was to act as attorney for his clients. The impression was, therefore, given to the referee by these parties that any request made by either was to be deemed the request of both, and that any action taken by either was to be deemed the action of both.

The matter was submitted to the referee and, by virtue of various stipulations in writing, signed by all the parties, the time of the referee to report was duly extended to July 6, 1906. On the 30th day of June, 1906, the referee made and signed a report, which is the report offered for confirmation, and gave notice of the rendering of the same, together with a copy thereof, to all the attorneys.

The whole of the present controversy arose thereafter in consequence of what, in my opinion, is the mistaken belief of the attorneys with respect to the requirements of the Code in relation to the report. (The provisions of the Code which will show this mistake will be discussed hereafter.) It appears that the counsel for the executors and, also, counsel for Coombs were under the belief that it was imperative upon the referee to make and sign findings of fact and conclusions of law; and this belief was shared by the other parties, who, to protect their interests, thought it was necessary that there should be before the referee proposed findings and conclusions of law, to the refusal of the referee to find any of which they could take proper exception. And, while it does not appear that the referee definitely determined as to whether this contention was correct, yet it is evident that he yielded to the requests of the attorneys and permitted them to have an opportunity to submit the findings and did not file his report; and, accordingly, by several extensions, their time to submit was extended to August 8, 1906.

About the first of August, requests were made to him to further extend the time in which all parties could finally

submit all papers in the controversy until October first.   On August fourth, four days before the stipulation made by all the parties expired, the referee wrote a letter in which he stated that, if it was desired to have him pass upon the findings so that they might be filed with his report, it would be necessary for him to have a week after such findings were handed to him to file his report and said that, unless he heard from any of the attorneys to the contrary, he would assume that this arrangement was satisfactory.   The receipt of this letter by Coleman, counsel for the moving party, is conceded; and it is also conceded that he did not object thereto or make any request to the referee to shorten the time asked for by the other attorneys.   Now, as the parties who were most solicitous for an opportunity to submit proposed findings of fact and conclusions of law were the firm of Kenneson, Emley & Rubino, his colaborers, it may be deemed that the request for an adjournment had practically come from the moving party.   At this time it is apparent the referee was anxious to report and end the matter, and that it was only in consequence of the importunities of these attorneys that he did not do so.

At the time he wrote the letter referred to — on August 4, 1906 — he delivered his report to the counsel for the executors with the statement that, as the parties had asked for an adjournment until October to file their requests, the report should not be filed until then, so as to give them the opportunity to comply, but that he deemed it advisable, as a means of protection (apparently in view of the new delay), to make delivery of the report.   On September twenty-fourth, the referee wrote to the attorneys calling attention to the delays that had occurred and stating that he would like to dispose of the reference and trusted that they would shortly arrange that the same be settled.   Upon requests from Kenneson, Emley & Rubino for further time to submit their proposed findings, the time was extended to October eighteenth.   At this period it was not disclosed to the referee, nor was it apparent in any way in the proceedings, that there had been any severance in the relations between Coleman and Kenneson, Emley & Rubino; but the condi-

Surrogate's Court, Kings County, February, 1907.  [Vol. 53·

tion which existed at the commencement of the case, that each represented the other, was apparently still continuing.

On October fifteenth, the referee again wrote to Kenneson, Emley & Rubino, soliciting them to file their requests, as he was desirous of delivering his report. The following day, Owen & Sturgis, counsel for the executors, duly filed their requests to find, and Kenneson, Emley & Rubino wrote to the referee acknowledging the receipt of his letter of the previous day and stating that negotiations were in progress for the settlement of the controversy and asking further time to file requests; the time was accordingly extended to October twenty-fifth. On October twenty-third a further letter was sent by Kenneson, Emley & Rubino to the referee, stating that the negotiations for settlement were still pending and again soliciting an extension until November seventh.

Further oral representations were made to the referee that these negotiations were still in progress and further requests made for more time. While the matter was in this state, Mr. Coleman, on behalf of his client, Mrs. Dumbel, served a notice on November thirteenth that he elected to terminate the reference. This action of Coleman, in electing to terminate the reference on the ground of alleged delay, when the only delay was due to the importunities of the attorneys of record for the parties whose interests he himself also represented, was manifestly a surprise to all parties. The referee immediately gave notice to all the parties that they were required, within two days from the receipt of the same, to file their requests to find, after which time no further appeals for extensions would be granted. A representative of Kenneson, Emley & Rubino called upon the referee and disclaimed any part in the conduct of Coleman and explained that it was evidently prompted by some friction between Coleman and his firm.

At this time Emley had his requests to find, which he delivered to the referee; but he also solicited the latter to withhold the filing of his report, as, notwithstanding the action of Coleman, the negotiations for a settlement were still in progress and he believed there was still a prospect

of their success.   To these requests the referee consented; and, on November twenty-second, Kenneson, Emley & Rubino gave to the parties notice of motion for a reargument of the case before the referee on November thirtieth.   On November twenty-third a stipulation was filed with the referee that the time to file findings of fact and conclusions of law should be extended to December fourth.   This stipulation, however, contained the provision that it was without prejudice to the rights of any party.   On November thirtieth, the motion for a reargument was adjourned until December tenth, and, on December fourth, a stipulation extending the time to file findings until December eleventh, which was in exactly the same form as the one of November twenty-third, was made.   On December tenth a hearing was had upon the notice of motion given by Kenneson, Emley & Rubino.   At the inception of this hearing, Coleman objected to the same " on the ground that the referee has no jurisdiction."   For what reason he claimed that the referee had no jurisdiction is not disclosed, nor does it appear in his motion papers. This objection was overruled, a reargument was had and, at the conclusion of it, the referee asked if there was any reason why he should not then file his report.   Accordingly, he filed his report on December fifteenth, together with findings and proposed findings of the various parties, and gave notice to all that he had done so.   His report was dated December twelfth; but, on December fourteenth, Coleman served another notice stating that he elected to end the reference, on the ground that the referee had failed to report within the time allowed by law.

There does not seem to be any dispute as to the correctness of these facts.   The difference and divergence which have arisen grow out of the varying contentions as to their effect and as to the legal questions involved.

At the outset of the discussion of the law affecting the matter, it is important that we carefully consider the provisions of the Code covering this subject.   These are to be found under title 2, chapter X.   In the Supreme Court a referee may be appointed to hear and determine, in which case he has all the powers of a judge, and upon his decision

judgment is entered with like effect as if it were the decision of a judge, and an appeal is taken directly to the Appellate Division.   By section 1023 it is provided that, upon a trial before a judge or referee, the attorneys for the parties must submit in writing proposed findings of fact, upon which the court or referee must note whether he has found or refused to find the same, before the rendering of his decision or report.   Section 1015 of the Code provides that the court may, wherever it is necessary for its information, order the referee to take proof and report to the court his opinion thereon.   It is manifest, therefore, that the provisions of section 1023 with relation to findings do not apply to a reference which is merely to take proof and report, as provided in section 1015.   Matter of Sprathoff, 50 Misc. Rep. 109; affd., 112 App. Div. 918.

But the order of reference in this case was not made under any of the provisions of title 2, chapter X, but came within the provisions of section 2546 of the Code, which permit a surrogate to refer certain matters to take proof and report. That being so, an inspection of section 1019 discloses that it was not intended to apply to a reference in the Surrogate's Court and, therefore, that the entire basis upon which the moving party has acted is wanting.   Section 1019 provides that, upon the trial by a referee of an issue of fact or law (which is manifestly the reference to hear and determine referred to in sections 1011–1014) and also upon a reference in pursuance of section 1015, the report must be delivered within sixty days.   If it was intended to have the provisions of this section apply to a reference under section 2546 it is apparent that the Legislature would have said so; and, this being a section subject to strict construction, it cannot be extended by implication.

In none of the cases which I have been able to find from a diligent examination of the reports, was it ever attempted to have the provisions of section 1019 apply to a reference emanating from the Surrogate's Court.   On the contrary, in somewhat similar references it was distinctly held that the provisions of section 1019 did not apply.   In Matter of Bennett, 21 Abb. N. C. 238, it was expressly held that a

reference to take proof of the amount of the compensation due an attorney did not come within section 1019 of the Code. This adjudication was followed in Doyle v. Mayor, 26 Misc. Rep. 61, and in Bennett v. Pitman, 48 Hun, 612. In Godding v. Porter, 17 Abb. Pr. 374, it was held that " the section of the Code requiring referees to report within sixty days does not apply to a case of a reference under the approval of the surrogate."

This is sufficient to deny the motion but, in view of the importance of the proposition to the various parties, it seems desirable that every phase of this branch of the situation should be taken up and disposed of.

Mr. Coleman's contention, in which he is joined in the argument of this motion by Mr. Kenneson, is that, if the time within which the cause shall be finally submitted has been fixed, the referee has no power, upon the request of any of the parties, to extend the same; and that, if he does so, even if he exhibits perfect good faith, his jurisdiction is lost and the motion to elect to end the reference should be granted. Beyond his mere assertion that this is the law, he quotes no authority to sustain him; nor does he show any reason for placing such a construction upon section 1019 of the Code. None of the following cases, which seem to be the important ones bearing on this subject, sustains the contention. Parker v. Baxter, 19 Hun, 410; Gregory v. Cryder, 10 Abb. Pr. (N. S.) 289; Gill v. Clark, 31 Misc. Rep. 337; Dwyer v. Hoffman, 39 Hun, 360; Patterson v. Knapp, 83 id. 492; Morrow v. McMahon, 71 App. Div. 171; Tallmadge v. Lounsbury, 59 N. Y. Super. Ct. 132; Morrison v. Lawrence, 2 How. Pr. (N. S.) 72; Bennett v. Pitman, 48 Hun, 612; Godding v. Porter, 17 Abb. Pr. 374; Doyle v. Mayor, 26 Misc. Rep. 61; Little v. Lynch, 99 N. Y. 112; Ballou v. Parsons, 52 Hun, 164; affd., 55 N. Y. 673; Foster v. Bryan, 16 Abb. Pr. 396; Richards v. Bloom, 5 Hun, 182; Thiesselin v. Rossett, 3 Abb. Pr. (N. S.) 54.

On the contrary, from the reading of many of them, it is apparent that the direct opposite is the case. From a general examination of these cases the following principles may be deduced as covering the situation in hand:

That the statute should be strictly construed was determined in Bennett v. Pitman, 48 Hun, 612, in which the General Term said " the provisions of the section are stringent and should be carefully limited to the cases expressly mentioned therein." In Gregory v. Cryder, 10 Abb. Pr. (N. S.) 296, it was held that " the jurisdiction of the referee ceased by the service of the notice. The order referring and all subsequent proceedings are a mere nullity, the same as if not existing.  *  *  *.  The statute is plain in its requirements and the duty of the court is fairly to apply and carry it into effect." To the same effect are Morrow v. McMahon, 71 App. Div. 171; Little v. Lynch, 99 N. Y. 112, and Geib v. Topping, 83 id. 46.

The provisions of the Code in question do not prevent the referee from acting after the expiration of the sixty days, and his report is good unless there has been a delay of sixty days and some one of the parties has made the election under the section. If the party has not done so, he cannot object to the confirmation of the report or move to set it aside because made subsequently to the time allowed by the Code. In People v. Holly, 20 Wend. 481, the court said, " it is not a condition precedent to its validity that their report be made within sixty days." In Foster v. Bryan, 16 Abb. Pr. 396, it was held that " there is no limitation imposed upon the power of the referee to make a valid report, although more than sixty days have elapsed, unless one of the parties has taken some step manifesting an intention to proceed as if no reference had been ordered."

A referee has power, upon the application of any party, to enlarge the time within which the case shall be finally submitted. Morrison v. Lawrence, 2 How. Pr. (N. S.) 72. " The referee has power to enlarge the time for the submission of briefs, as he would have the power to postpone the argument of the case beyond the day fixed, if the case was to be submitted on oral argument."

The report provided by section 1019 of the Code means a simple report of the referee's decision. Hence, if, in the case of a referee appointed to hear and determine, whose duty it is to file findings of fact and conclusions of law, a

report informal in form be submitted within the sixty days, he has complied with the section. Tallmadge v. Lounsbury, 59 N. Y. Super. Ct. 131. "Plaintiffs take the ground that the document filed by the referee was not a report within the meaning of the Code. Although it is the case that the document contained no findings of fact, as required by the Code, this omission did not prevent the document having the character of a report, even if such report be extremely imperfect and an insufficient foundation of a judgment. * * *. The referee had made, within the intent of section 1019, his report within the sixty days, and having made it, such as it was, the plaintiff was not entitled to end the reference."

The time of the referee to report, in addition to being extended by formal stipulation, is deemed extended by such conduct of the parties as in fairness should estop the litigant from taking advantage of the strict letter of the law. In Dwyer v. Hoffman, 39 Hun, 360, the motion to vacate was denied, "although the sixty days allowed by section 1019 had expired, upon the ground that the delay was caused by the defendant's propositions and attempts to accomplish a settlement, and it would be unjust to allow him to take advantage of his own acts; such a state of facts withdrew the omission to take up or file the report from the operation of the statute. * * *. It would be unfair where the delay is occasioned by the unsuccessful party and for his benefit to permit him to avail himself of an advantage thus gained and his acts should be declared in effect a consent for the enlargement of the time within which the report should be made."

In Gill v. Clark, 31 Misc. Rep. 337, the court said: "It is unquestionably true that section 1019 was enacted for the benefit of parties to litigation, and may be waived by them. This may be done not only by formal stipulation, but by such conduct as in fairness estops the litigant from taking advantage of the strict letter of the law."

Parties may agree orally, in the presence of the referee, that he shall file his report at an indefinite time; and, if one of the parties desires to terminate the reference, he

Surrogate's Court, Kings County, February, 1907.    [Vol. 53.

cannot do so abruptly by service of a notice of election. Ballou v. Parsons, 67 Barb. 19. " The fairer and better rule would be, as it seems to me, to require, in such case, a notice to the party and referee, one or both, that, unless the report is made and delivered within a reasonable time, to be specified, say ten or twenty days, the reference will be deemed ended. This would render definite what was before left by stipulation indefinite.. This rule is in conformity also with that applied to all agreements when the performance is left indefinite, and it is just in its application." Affirmed, 55 N. Y. 673.

In the face of the law, as outlined by the foregoing decisions, there can be no question that the delivery of the report on August fourth to the attorney for the executors was a compliance with the section of the Code referred to; and, as that was within the time which by express stipulation the referee had to decide the case, the mere fact that subsequently there was some further discussion in relation to findings and a redelivery of the report to the referee did not give to any of the parties the right to terminate the reference. All that the Code requires is that the referee shall either file with the court or deliver to the attorney his report. If the attorney, or the various attorneys, after that is done, try to get the referee to take the report or to do any other act, while they may make such act the basis of a motion asking the court to intervene, yet such a situation is not covered by the provisions of section 1019; as the sole right given to the party by that section is based upon the failure of the referee to make a report, and no mention is made as to what shall be done in the event of the referee or the parties desiring to change or modify such report.

As I have heretofore shown, by referring to the sections of the Code in question, this report was complete and perfect and, in any circumstances, under the doctrine of Tallmadge v. Lounsbury, was sufficient to take the case out of their provisions.

This establishes, therefore, a second reason for the denial of the motion. But, passing the same and taking up the subsequent events, we necessarily have presented to us the

question as to when, under the statute, the case is to be deemed finally submitted, and when, under the facts in this case, the matter was so finally submitted. Upon this subject it seems to me that the Code and the foregoing decisions determine that, upon the conclusion of the taking of testimony if the referee in good faith, upon the application of any party, is willing to hold the reference open to permit such party to submit anything deemed necessary by such party, then the case is not yet finally submitted. It is not a question of whether the papers to be submitted are sufficient to the controversy. It is not whether at this time they are to be regarded as matters which are controlling, but the sole question is, was there in good faith an extension of time by the referee to submit papers given in pursuance of a request which was also made in good faith?

It is a matter of experience that zealous attorneys may want to submit matters which, to a person separated from the interest which they have in the litigation, may appear unnecessary. It is immaterial whether such papers to be submitted are exhibits, briefs or findings, provided they are pertinent to the controversy, if the request is made in good faith and the action of the referee in giving the party time is made in good faith. As there is nothing in the entire record which shows that the requests for time to submit briefs were not made in good faith, and as there is nothing showing that the referee's action thereon was otherwise than in perfect good faith and with a desire to be courteous and to conserve the rights of the litigants, the decision of this matter becomes a very simple one.

In determining the time at which the case was finally submitted, we will take up, first, the conditions which preceded and which existed on November thirteenth, the day of the first notice of election to terminate the reference.

The referee's letter of August fourth — in which he stated that an application had been made to extend the time for the submission of findings until the first of October, and that if this was granted he would need a week thereafter, and further saying that, in the absence of objection, he would assume that this was consented to — not being resisted or

Surrogate's Court, Kings County, February, 1907.  [Vol. 53.

controverted in any way, unquestionably operated as an extension of the time to the seventh of October. And by oral requests this time was evidently further extended until October fifteenth. In pursuance of an application by letter, the referee extended the time to October twenty-third and, by subsequent letter, to November seventh. From these letters it is apparent that, although the extension was obtained for the ostensible purpose of enabling the parties to submit their findings, in fact the extension was asked for in consequence of the negotiations for settlement which were pending between all of the parties. Thus, even if in this way the time to submit had by accident passed, yet the case is brought squarely within the doctrine of Dwyer v. Hoffman and Gill v. Clark, *supra*.

The power of the referee to thus extend, upon the application of a party in good faith, is within the decision of Morrison v. Lawrence, *supra*.

On November seventh, and shortly thereafter, there were further oral requests for time and statements that the matter was in negotiation. Even, therefore, if November seventh be regarded as the last day for parties to submit findings and until which the referee had given them to submit findings, his time to pass thereupon and make his report ran for sixty days from that time, namely, until January seventh; and hence the notice of election given by Mr. Coleman on November thirteenth lacked the basis of the neglect of the referee to make a report within sixty days after the matter was finally submitted, because, in the face of the requests of the parties, it cannot be said that this matter could be deemed to have been finally submitted previous to November seventh.

That this condition of affairs arose in consequence of the delay of the parties to get the papers which they desired to have passed upon before the referee into his hands, and not a neglect of his to pass upon any matter which was before him, is further confirmed by his notice of November thirteenth, in which he requires all parties to submit their findings within two days under penalty of his refusing them further time. In pursuance of this notice, Kenneson, Emley

& Rubino submitted their findings, and some of the other parties asked for additional time to do so. On November nineteenth, Kenneson, Emley & Rubino had the referee give notice that, on November thirtieth, there would be a reargument of the matter; and, a few days later, the stipulation of November twenty-third was made extending the time to December fourth. It is the contention of the moving party that this stipulation by virtue of its being stated to be " without prejudice " did not operate to extend the time within which the case should be submitted. I am unable to accept this interpretation. Any such construction would be an absurdity because it would in effect be saying that " the time is hereby extended to December fourth and that such time is not extended." My theory of the effect of the notice is that it sufficed to extend the time to December fourth and that the statement that it was " without prejudice " meant without prejudice to any of the rights of the parties except the one of opposing the extension of time. That being so, even if the notice of November thirteenth to elect to end the reference was properly given, the rights under it were waived by the consent of November twenty-third. Upon November thirtieth, the time of the hearing of the motion for a reargument was adjourned to December tenth; and, in pursuance thereof, the stipulation of December fourth was entered into by which the time to finally file papers should be extended to December eleventh. And, of course, I give the same effect to this stipulation as to the one of November twenty-third, both being in the same terms. Therefore, by express stipulation in this case, the time within which the same was to be finally submitted was extended until December eleventh.

On December tenth the parties appeared for the purpose of the reargument. Coleman, on behalf of his client, contended that the referee had no jurisdiction. Kenneson, on behalf of his client, however, desired to be heard and evidently reargued the matter at some length. The fact that none of these delays were delays of the referee in making his report, but were due to the parties not getting the matter into final shape before the referee for report, is shown by

his query, at the hearing of December tenth, if there were any reasons then in existence why he should not file his report. Accordingly, the referee, within two days, on December twelfth, signed his report and, on December fifteenth, filed it, together with all the findings. As the case was not finally and conclusively submitted to him until December tenth, he had sixty days from that time in which to report; but, as stated, he signed his report and passed upon the findings within two days.

There was no ground, therefore, on December fourteenth, which authorized Mr. Coleman to elect to end the reference, and his notice is insufficient. The report which the referee filed is the report which he had made on June thirtieth, except that he changed the date thereof in consequence of the request of the parties that the findings might be submitted before the making of such report.

This is not the case of a slothful and dilatory referee, but rather the case of a referee desirous of giving the parties every opportunity to settle or submit anything that in their judgment was material to their side of the case; and, instead of being commended for his conduct, it is made the basis for a charge of misconduct by the attorneys whom he was endeavoring to accommodate. The language of Judge Barrett, in Dwyer v. Hoffman, *supra,* is very pertinent in this connection: " I am satisfied that the plaintiff's attorney was misled, and that the delay in taking up the report was really to accommodate the defendant and substantially at his request and for his purposes. To deprive the plaintiff of the benefit of the entire litigation, merely because he good naturedly gave defendant time to arrange some kind of a settlement, would be not only an injustice but, in my judgment, a very narrow, strained and technical view of a statute which was simply intended to compel prompt and industrious attention to the case upon the referee's part."

Motion denied, with twenty-five dollars costs.